UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                                               :

ROSEMARIE A. HERMAN, *individually and as beneficiary of the trust created by Rosemarie A. Herman as grantor dated November 27, 1991*,

                                                               19-CV-3662 (JMF)

                   Plaintiff,

                                                                  <ins>OPINION AND ORDER</ins>

      -and-

ARIEL E. BELEN, *in his capacity as Temporary Trustee of the Trust under Agreement dated November 27, 1991*,

                   Nominal Plaintiff,

      -v-

JULIAN MAURICE HERMAN; WINDSOR PLAZA LLC; WINDSOR PLAZA LLC; REVENUE FUNDING SERVICES LLC; TPG GLOBAL VENTURES LLC; DAN THOMAS LOUNSBURY, JR.; "ABC CORP"; "JOHN DOE"; and "JANE DOE,"

                   Defendants.

----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       At the heart of this case is a long-running and bitter dispute between siblings Rosemarie A. Herman and Julian Maurice Herman.[1] Rosemarie, through a trust, co-owned six Manhattan properties with Maurice. Through a series of transactions allegedly unknown to Rosemarie, Maurice obtained full ownership of the properties and sold five of them, keeping nearly all of the profits for himself. Rosemarie eventually learned of the scheme and filed suit in New York state court. The New York court restrained Maurice and certain entities he owned from encumbering or

---

[1]    To avoid confusion, the Court will refer to each sibling by his or her first name.

assigning the sole remaining property, and it eventually ordered Maurice's interests in that property to be conveyed to Ariel E. Belen, as Temporary Trustee of a trust dated November 27, 1991 (the "1991 Trust" and, together with Rosemarie, "Plaintiffs").  In this case, Plaintiffs challenge two agreements that allegedly frustrate their ownership of that property: (1) a lease of the property from one entity Maurice controls to another; and (2) an assignment of that lease to TPG Global Ventures LLC ("TPG"), which is owned by Defendant Dan Thomas Lounsbury, Jr.  Defendants now move, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss.  For the reasons that follow, their motion is denied.

## BACKGROUND

The following facts — drawn from the Complaint, documents appended to it or incorporated by reference in it, and matters of which the Court may take judicial notice — are assumed to be true for purposes of this motion.  *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).[2]

Rosemarie and her brother, Maurice, have been feuding for nearly a decade.  Rosemarie and her children, through a trust, owned a fifty-percent interest in six residential apartment buildings in Manhattan, including a building located at 952 Fifth Avenue (the "952 Building").  *See* ECF No. 8-1 ("Compl."), ¶¶ 2, 11-16.  Maurice, together with the trustee, who was a friend of Maurice's, executed a series of transactions, at the end of which Maurice, through wholly owned limited liability companies, owned all six properties.  *See id.* ¶¶ 11-16.  In 2002, Maurice sold five of the properties for more than $100 million.  *Id.* ¶ 17.  The one property that Maurice retained was the 952 Building, which he owned through Defendant Windsor Plaza LLC, a New York limited liability

---

[2]    Both parties filed affidavits and declarations in connection with Defendants' motion.  *See* ECF Nos. 8, 16, 20.  The Court may not, and does not, consider them for purposes of Defendants' motion under Rule 12(b)(6).  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Simon v. City of New York*, No. 14-CV-8391 (JMF), 2015 WL 2069436, at *1 n.2 (S.D.N.Y. May 4, 2015).

company ("Windsor New York").  *Id.* ¶¶ 15, 18-19.  Also in 2002, Windsor New York merged into Defendant Windsor Plaza LLC, a Delaware limited liability company ("Windsor Delaware"), which assumed ownership of the 952 Building and is also wholly owned by Maurice.  *Id.* ¶¶ 20-21.  Maurice concealed this scheme until 2010, when he went to court to appoint guardians for his mother, who lived in the 952 Building.  *Id.* ¶¶ 22-23.  In the course of those proceedings, Maurice claimed full ownership of the 952 Building.  *Id.* ¶ 24.

On January 25, 2011, Rosemarie filed suit in the New York Supreme Court, seeking, among other things, a reformation of the deed transferring the 952 Building to Windsor New York so as to transfer title to Rosemarie, imposition of a constructive trust on the 952 Building, and recovery of funds misappropriated from the 1991 Trust as well as a trust created by her father to benefit Rosemarie and Maurice (the "1990 Trust," and collectively, the "Trusts").  *Id.* ¶¶ 1, 25.  On January 28, 2011, Rosemarie filed a Notice of Pendency of Action relating to the 952 Building, which stated that Rosemarie had filed an action seeking reformation of the deed.  *See id.* ¶¶ 26-27.  On January 14, 2014, the parties stipulated, and the New York Supreme Court ordered, that the expiration date associated with the Notice of Pendency would be extended from January 28, 2014, until April 1, 2014.  ECF No. 16-2.[3]  On March 26, 2014, the New York Supreme Court ordered that, if Rosemarie filed an order to show cause regarding extension of the Notice of Pendency, the notice would be extended "until the [order to show cause] is decided."  ECF No. 16-3.  Rosemarie filed such an order to show cause, and on May 21, 2014, the Supreme Court extended the Notice of Pendency "until the final determination of Plaintiffs' Order to Show Cause."  ECF No. 16-4.  On June 23, 2014, the state court denied the motion to extend the Notice of Pendency.  *See* ECF No.

---

[3]  "In adjudicating a motion to dismiss, a district court may take judicial notice of the existence of . . . filings in other relevant cases."  *See Chan Ah Wah v. HSBC N. Am. Holdings Inc.*, No. 15-CV-8974 (LGS), 2019 WL 859042, at *2 n.4 (S.D.N.Y. Feb. 22, 2019).

3

16-6, at 5. Rosemarie appealed, and on November 5, 2015, the Appellate Division reversed, holding that "the filing of a notice of pendency was proper and the notice should be extended." *Id.* at 5-6; Compl. ¶ 28. On December 3, 2015, the Clerk of Court entered remarks indicating that the Notice of Pendency was extended for three years, effective January 28, 2014. *See* ECF No. 16-7, at 3. On December 2, 2016, the Notice of Pendency was again extended, from January 28, 2017, until January 28, 2020. *See* ECF No. 16-5; ECF No. 16-7, at 3; Compl. ¶ 28.

Meanwhile, litigation of the case continued in the New York Supreme Court. By Order dated July 17, 2015, the Supreme Court granted a temporary restraining order enjoining Maurice from assigning or leasing the 952 Building. *See* Compl. ¶ 29. On October 19, 2015, the state court restrained Maurice, Windsor New York, and Windsor Delaware from assigning or otherwise encumbering the 952 Building, except as to residential leases of apartments in the building, which could be leased for no more than two years (the "Restraint Order"). *See id.* ¶ 30. On November 6, 2015, Rosemarie filed and recorded the Restraint Order with the New York City Department of Finance, Office of the City Registrar (the "Registrar"). *Id.* ¶ 31.

On August 28, 2017, Maurice filed and recorded a "Memorandum of Lease" with the Registrar. *Id.* ¶ 33. According to the memorandum, Windsor Delaware leased an apartment (the "Apartment") in the 952 Building to Revenue Funding Services LLC ("Revenue Funding"), one of the Defendants here, for ninety-nine years, entirely rent-free. *Id.* ¶¶ 34, 43. Notably, Maurice owns both companies. *Id.* ¶ 37. Also on August 28, 2017, Maurice filed and recorded an Assignment and Assumption of Lease (the "Assignment"), dated May 2, 2014. *Id.* ¶ 68. According to the Assignment, Revenue Funding assigned its rights to the lease to TPG Global Ventures LLC ("TPG"), a Florida limited-liability company whose registered agent is Defendant Dan Thomas Lounsbury, Jr., who is also a Defendant here. *See id.* ¶¶ 68-72, 80. The Assignment does not

4

require TPG to pay rent, nor does it describe any other consideration, although Maurice claims that TPG provided Revenue Funding with lines of credit. *See id.* ¶ 76, 79.

On September 19, 2017, the Supreme Court ordered Maurice to transfer the 952 Building from Delaware Windsor to Maurice and Belen, as Temporary Trustee of the 1991 Trust, as tenants in common. *Id.* ¶ 96. Maurice did not comply and, on March 26, 2018, the New York County Sheriff conveyed the 952 Building to Maurice and Belen. *Id.* ¶¶ 97-99. On October 16, 2018, the Court found that Maurice had attempted to evade the judgment, including by encumbering the 952 Building with the Lease for the Apartment. *Id.* ¶ 100. Accordingly, the Court ordered that Belen be appointed as a Receiver for the 952 Building and that Maurice's interest be conveyed to Belen as Temporary Trustee of the 1991 Trust. *Id.* ¶ 101. Since December 20, 2018, the 952 Building has been fully owned by Belen as Trustee. *Id.* ¶ 103-04.

On March 15, 2019, Plaintiffs filed this suit in New York Supreme Court, naming as defendants Maurice, Lounsbury, and the entities they own and control. *See id*. at 27. Plaintiffs principally seek a declaration that, as to them, the Lease and Assignment are void. Plaintiffs contend they are void because, first, they were executed after the Notice of Pendency and the Restraint Order were filed and thus in effect, and second, because they constitute fraudulent conveyances under provisions of the New York State Debtor and Creditor Law. *See id*. at 25. Plaintiffs also assert claims for fraud, slander of title, conspiracy to commit slander of title, ejectment, and use and occupancy. *See id.* at 26-27. Defendants removed the action to this Court on April 24, 2019, *see* ECF No. 1, and now move to dismiss, *see* ECF No. 6.

## LEGAL STANDARDS

In evaluating Defendants' motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Plaintiffs' favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per

curiam).  A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Id.* at 570.

Defendants also move to dismiss, pursuant to Rule 12(b)(1), for lack of standing.  In resolving a motion under Rule 12(b)(1), "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)).  Additionally, a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [the Court] may not rely on conclusory or hearsay statements contained in the affidavits."  *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).  Ultimately, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

## DISCUSSION

Defendants raise three arguments in support of their motion to dismiss: (1) that Plaintiffs lack Article III standing because they had no ownership interest in the Apartment at the time of the Assignment; (2) that the Assignment cannot be challenged because TPG is a bona fide, good-faith

purchaser for value; and (3) that Plaintiffs do not allege Lounsbury's fraud with sufficient particularity. The Court will address each argument in turn.

### A.      Article III Standing

Defendants' first argument — that Plaintiffs lack Article III standing because, at the time that both the Lease and the Assignment were executed, they had no legal interest in the property, *see* ECF No. 7 ("Mem."), at 11 — can be swiftly rejected. Plaintiffs' alleged injury is self-evident: They own title to the 952 Building, and Defendants executed a lease and assignment that interfere with their rights to use and dispose of one of the building's apartments. It does not particularly matter, for the purposes of standing, when the injury-causing conduct occurred, provided that the injury is fairly traceable to the conduct, as it is here. *See, e.g.*, *Heldman on behalf of T.H. v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992) (requiring only that the plaintiff "demonstrate a causal nexus between the defendant's conduct and the injury"). And, in any event, assuming that the notice of pendency was effective, the Lease and Assignment were contingent upon the outcome of the action in the New York Supreme Court. *See* N.Y. C.P.L.R. § 6501.

### B.      Bona Fide Purchaser Status

Defendants' next argument — that the Assignment cannot be challenged because TPG is a bona fide purchaser for value, *see* Mem. 7-11 — fails for at least two reasons. First, TPG's alleged status as a bona fide purchaser is an affirmative defense. *See U.S. Bank Nat'l Ass'n v. Jordan*, 176 A.D.3d 1523, 1523-24 (N.Y. App. Div. 2019); *T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10-CV-2843 (JG) (ARL), 2010 WL 4038826, at *6 (E.D.N.Y. Oct. 14, 2010); *see also Independent Coal & Coke Co. v. United States*, 274 U.S. 640, 650 (1927) ("Bona fide purchase is an affirmative defense."). The law is clear that a plaintiff is not required "to anticipate potential affirmative defenses . . . and to affirmatively plead facts in avoidance of such defenses." *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Instead, a court may grant a motion to dismiss based on

an affirmative defense only if, on the face of the complaint, the defense "clearly" applies. *See Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999); *accord Galin v. Hamada*, No. 15-CV-6992 (JMF), 2016 WL 2733132, at *2 (S.D.N.Y. May 10, 2016). That is plainly not the case here, as Defendants themselves concede that their argument relies on materials outside the pleadings. *See* Mem. 1 ("When these missing pieces are placed back into the picture painted in the Complaint, it is evident that Plaintiffs' claims fail because TPG is a bona fide good faith purchaser for value.").

Second, even if the Court could consider materials outside the Complaint, Defendants' argument would fall short. Under the bona fide purchaser doctrine, a party that "purchases real property in good faith, for valuable consideration, without actual or record notice of another party's adverse interests in the property and is the first to record the deed or conveyance . . . takes title free and clear of such adverse interests." *Panther Mountain Water Park, Inc. v. County of Essex*, 40 A.D.3d 1336, 1338 (N.Y. App. Div. 2007). At the time of the Assignment, however, Defendants were on notice of Plaintiffs' claim to the property due to the pending Notice of Pendency. *See* Compl. ¶¶ 26-28, 34, 72; *see also Foster v. Piasecki*, 259 A.D.2d 804, 806 (N.Y. App. Div. 1999) (noting that "a notice of pendency . . . give[s] constructive notice of plaintiffs' claim to the property"). Defendants contend that the Notice of Pendency had expired at the time, *see* Mem. 9, but that is not the case. On March 26, 2014, the New York Supreme Court ordered that, if the Plaintiffs filed an order to show cause seeking an extension of the Notice of Pendency, the notice would be "extended on consent of the parties until the [order to show cause to extend the Notice of Pendency] is decided." ECF No. 16-3. Plaintiffs did, in fact, file an order to show cause, which the New York Supreme Court did not resolve until June 23, 2014, *see* ECF No. 16-6 at 5 — more than a month *after* the Assignment, *see* ECF No. 8-3, at 11 (Assignment dated May 2, 2014). And while the Supreme Court then denied the extension, the Appellate Division reversed that decision and

8

extended the Notice of Pendency until January 28, 2017 — a date that was later extended to January 28, 2020.  *See* ECF Nos. 16-5, 16-6, 16-7.[4]

## C.     Rule 9(b)

Finally, Defendants argue that Plaintiffs' fraud claim against Lounsbury falls short of the heightened pleading requirements imposed by Rule 9(b) of the Federal Rules of Civil Procedure. *See* Mem. 12-15.  To satisfy Rule 9(b), a plaintiff alleging fraud "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012) (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)).  A plaintiff satisfies the final requirement if she "plead[s] those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (internal quotation marks omitted).  A plaintiff asserting a claim for fraud may not plead facts "based on information and belief" — except if the facts alleged "are peculiarly within the possession and control of the defendant" and the allegations are "accompanied by a statement of the facts upon which the belief is founded." *Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 310, 313 (S.D.N.Y. 2015) (internal quotation marks omitted).

---

[4]     Defendants' bona fide purchaser argument likely fails for other reasons, as well.  First, there appears to be no evidence — certainly no evidence that the Court may consider on a motion to dismiss — that TPG paid adequate consideration for the Assignment.  *See, e.g.*, *Ten Eyck v. Witbeck*, 135 N.Y. 40, 47 (1892) (holding that "the good faith of a purchaser may be seriously impaired, if not destroyed, by the inadequacy of the price at which the property is offered by a person claiming to be its owner" because "[i]f the sum which the seller is willing to take is grossly disproportionate to the value of [the property], it is strong proof of a defective title, and sufficient to put a prudent man upon inquiry").  And second, the Notice of Pendency was indisputably effective in August 2017, when the Assignment was actually recorded.  *See, e.g.*, *Sharestates Investments, LLC v. Hercules*, 178 A.D.3d 1112, 1115 (N.Y. App. Div. 2019) ("A person holding an interest that accrued prior to the filing of a notice of pendency, but not recorded until after the filing of the notice, is still so bound." (internal quotation marks omitted)).  But the Court need not, and does not, reach these issues.

Applying these standards here, the Court concludes that Plaintiffs clear the bar.  Plaintiffs specify the allegedly fraudulent statement at issue: The statement on the Assignment itself that the Assignment was made on May 2, 2014.  *See* Compl. ¶ 133.  Plaintiffs allege that, contrary to that statement, the Assignment was not made until "after February 13, 2017" and "probably sometime shortly before it was publicly recorded" in August of 2017.  *Id.* ¶ 74.  And they provide support for that allegation: The Assignment includes a handwritten address for TPG and TPG was not located at that address until February 2017.  *See id.* ¶¶ 73-74; ECF No. 16-15.  There may be an innocent explanation for that fact, as Defendants claim, *see* Mem. 8, but that is a factual question that cannot be resolved on a motion to dismiss.  And in light of the rent-free Assignment, the three-year delay in recordation, the conspicuous absence of the Lease and Assignment from the underlying state court action, *see* Compl. ¶¶ 88-90, and the New York Supreme Court's determination that "Maurice has taken various steps to frustrate plaintiffs' ability to enforce the judgment," *see* Compl. ¶ 100; ECF No. 16-18 at 3, Plaintiffs' contention that the Assignment was, in fact, executed in August 2017 is certainly plausible.  From that, it follows that Lounsbury must have known that the Assignment was not executed on May 2, 2014.  And Plaintiffs plausibly allege that Lounsbury had a motive to deceive: Not only because he was allegedly friends with Maurice, Compl. ¶ 80, but also because convincing Plaintiffs that the Assignment predated the Restraint Order provided the only chance at maintaining control over the Apartment.  Taken together, those allegations are enough to satisfy Rule 9(b).  *See IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27-28 (2d Cir. 2014) (summary order) ("A strong inference of fraudulent intent may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." (internal quotation marks omitted)); *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 518 (S.D.N.Y. 2016) ("In order to raise a strong inference of scienter through 'motive and opportunity' plaintiffs

must allege defendants benefitted in some concrete and personal way from the purported fraud." (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED in its entirety. Unless and until the Court orders otherwise, Defendants shall file an answer **within three weeks of the date of this Opinion and Order**. By separate order, the Court will schedule an initial pretrial conference. The Clerk of Court is directed to terminate ECF No. 6.

SO ORDERED.

Dated: April 30, 2020
      New York, New York

_____
                JESSE M. FURMAN
                United States District Judge